Enrique **FELICIANO**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 1183 S 402.

Supreme Court of Indiana.

Sept. 6, 1984.

Wendell W. Goad II, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Murder. The jury found appellant to be an habitual offender. The court sentenced appellant to forty (40) years on the Murder conviction. The court then enhanced the sentence by thirty (30) years based upon the habitual offender finding.

The facts are these. Appellant, the victim and others met in a Lake County social club. Following a night of drinking, dancing and drug use, the victim invited a number of people to return to her home. A total of five persons returned to the home in the early morning hours. They included the victim, Rosalinda, a woman named Diane, appellant and two other men.

When they arrived at the victim's second story apartment, they turned on the stereo and began to dance. A dispute soon arose between the victim and Diane concerning the amount of attention being given to one of the men. The women carried their argument onto the second story porch landing. The two pushed at one another and the victim fell over the railing to the ground below. Diane fled the scene and the other two men assisted Rosalinda to her bedroom. She was injured but not severely. The other two men left, however, appellant stayed behind.

The victim's children were awakened by the events and they requested appellant to leave. He refused. He then attempted to fondle one of the children. When the child resisted, he struck her with a frying pan. Rosalinda then attempted to persuade appellant to leave. He threatened her and she ran onto the landing in an attempt to escape. He hit her with the frying pan and she fell again to the ground. Appellant then ran to her, held her by the hair and repeatedly struck her in the head with the pan. The victim lived for two weeks before she died of the injuries to her head and resulting complications. She died on March 23, 1981.

Appellant was arrested on April 1, 1981, for the crime, but was subsequently released. On May 27, 1981, a new arrest warrant was issued. He was not arrested pursuant to that warrant until February of 1983.

Appellant first alleges the trial court erred when it permitted a rebuttal witness to recount the contents of a newspaper story which was printed two days after the May 27 warrant had been issued. The article stated that appellant was being sought on a murder warrant for the instant crime.

■ Newspaper articles are, of course, by their very nature, hearsay and for that reason are seldom proper evidence to prove any fact, except the bare fact of their publication. The article was not competent evidence to establish the fact of the issuance of the warrant or the fact that appellant was being sought for murder. The article itself was not introduced in evidence, but the police officer was allowed to testify of its existence. This, of course, was error. However, under the circumstances in the case at bar, we hold that it was harmless error.

Appellant took the stand in his own behalf. He testified he had remained in the East Chicago area after his release in early April. He further stated he left the area at the end of May to visit his sister in New Orleans. He stayed there for one month. He then returned to Lake County for a short time before settling in Joliet, Illinois, for over one year. In his direct testimony he did not indicate whether or not he was aware of the newspaper story of late May. However, the record in this case clearly indicates there was, in fact, an outstanding arrest warrant for him at the time he indicates he left the jurisdiction. Thus, all matters referred to in the article are clearly established by competent evidence in this case. We therefore hold that, although the mentioning of the newspaper article was erroneous, it was harmless error.

Appellant's last two issues concern events which transpired during the habitual offender phase. He contends the State failed to meet its burden of proof by failing to properly link him to the person who

committed the two prerequisite prior felonies.

 The court, with no objection from the appellant, admitted into evidence the information and judgment on two separate unrelated felonies committed by one Enrique Feliciano. The State then attempted, over appellant's objection, to link these to appellant by way of the face sheets of the presentence reports for the two felonies. These sheets contain the same information as to name, address, date of birth, height, weight, eye and skin color, body build and the location of two distinctive tatoos. One tatoo was heart shaped and located on the forehead. We find appellant's unique name, his admission he had lived on the street named on the reports and his physical similarities, including the tatoo, are sufficient to support a jury inference that appellant is the same man who committed the two prior felonies.

Appellant argues the court erred when it failed to have the bailiff sworn prior to the jury beginning its deliberations on the habitual offender allegation. The bailiff was sworn prior to the commencement of deliberations on the murder charge. Less than three hours later, the same jury returned to the jury room to consider the habitual offender charge. The record is in conflict as to whether the bailiff was sworn on that occasion.

Appellant alleges he was prejudiced by the failure. He contends the failure of the jurors to see the bailiff sworn resulted in the jurors having a depreciated view of their role in the second hearing. We do not agree. The court was required by the statute to swear the bailiff. *See* Ind.Code § 35–37–2–6 [West Supp.1983].

It is clear the bailiff was sworn once. Although the proceeding was bifurcated for the purposes of the habitual offender charge, there is nothing in the statute which would require a reswearing of the bailiff. He had been sworn once. This was the same jury over which he had charge. Even if we would assume for the sake of argument that he should have been sworn a second time, we can perceive no harm emanating to the appellant as a result of said failure. It stretches the imagination beyond reason to believe the jury would take its job lightly because the bailiff was not sworn a second time. There is nothing in the record before us to show any reversible error in this regard.

The trial court is in all things affirmed.

All Justices concur.