**Richard BOYDSTON, Appellant
(Plaintiff Below),**

v.

**CHRYSLER CREDIT CORPORATION,
Appellee (Defendant Below).**

No. 49A02–8608–CV–279.

Court of Appeals of Indiana,
Second District.

Aug. 4, 1987.

Irwin B. Levin, David J. Cutshaw, Cohen Malad & Hahn, Indianapolis, for appellant.

Charles F. Robinson, Jr., John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Richard Boydston appeals the trial court's grant of summary judgment in fa-

vor of Chrysler Credit Corporation in his defamation suit. We affirm.

## FACTS

On March 4, 1982, Boydston purchased a new Plymouth Reliant from Eastgate Chrysler Plymouth (Eastgate). In order to finance the purchase of the car, Boydston executed a retail installment contract with Eastgate which was subsequently assigned to Chrysler Credit. After the purchase, Boydston experienced serious difficulties with the car. He took it to the dealer for service several times but continued to have problems. Three months later Boydston returned the vehicle to Eastgate, and on June 10, 1982, he formally notified Eastgate he was revoking his acceptance of the car pursuant to Ind. Code Ann. § 26–1–2–608 (Burns 1974). On July 30, 1982, Boydston brought suit against Eastgate for breach of warranty.

Boydston made two payments to Chrysler Credit on the installment contract in April, pursuant to the contract terms. However, when he began having difficulties with the car, Boydston stopped paying Chrysler Credit. On June 16 and 17, 1982, Boydston's attorney notified Chrysler Credit Boydston had voluntarily returned the car to Eastgate and had revoked his acceptance of the vehicle. Eastgate subsequently repurchased Boydston's installment contract from Chrysler Credit. On June 24, 1982 Chrysler Credit reported Boydston's transaction to Merchants Association, a credit reporting association of which Chrysler Credit is a member. The transaction was coded "RVD".[1] According to Mer-

1. The affidavit of John Bowker of Chrysler Credit states Chrysler Credit reported the Boydston transaction to Merchants Association on June 24, 1982 as "RVD". A "true and accurate copy" of the notification is attached to the affidavit. Inasmuch as this sworn statement was uncontroverted, the trial court's judgment includes the determination:

"And the Court having heard argument of counsel and being duly advised in the premises now finds (1) that there is no genuine issue as to any material fact regarding plaintiff's claim that Defendant Chrysler Credit Corporation published defamatory information with regard to Plaintiff Richard Boydston's credit status; (2) that publication of the statement that Plaintiff Richard Boydston's vehicle was

'Returned voluntarily. Paid by Dealer;' is not defamatory...."

Record at 114. Boydston concurs in this determination. In his motion to correct error, Boydston states:

"The facts most favorable to the plaintiff which preclude the grant of summary judgment are as follows:

c) After plaintiff had revoked acceptance and after he had returned the car to the dealer, the dealer reported the matter to Chrysler Credit Corporation, which, in turn, reported the transaction to the consumer credit reporting agency, the Merchants Association, as 'RVD' or 'Returned Voluntarily. Paid by Dealer.'"

chant's reporting forms, "RVD" means "Returned voluntary. Paid by dealer." On March 28, 1983, a credit report issued by Merchants Association to Boydston at his request reported the loan transaction as having a zero balance, one payment delinquent 30–59 days, and coded "RVN". According to Merchants' reporting forms, "RVN" means "Returned voluntarily."

Beginning about July 19, 1982, Boydston experienced difficulties in obtaining credit and was denied credit with several financial institutions and retailers in subsequent years. In November of 1983, the American Fletcher National Bank's credit card department refused to approve Boydston's credit application because it interpreted the reported credit transaction as a repossession. By that time, the Merchants report coded the subject transaction as "RVD" or "Returned voluntarily. Paid by dealer."

On May 16, 1984, Boydston filed suit against Chrysler Credit seeking a permanent injunction preventing Chrysler Credit from reporting the credit transaction without explaining the circumstances, and also seeking damages for publishing a false and defamatory credit report to Merchants Association. On April 24, 1986, the trial court granted summary judgment in favor of Chrysler Credit. Boydston appeals this judgment.

## ISSUES

On appeal Boydston argues that the trial court erroneously granted summary judgment because the following material issues of fact exist: whether the credit report information submitted by Chrysler Credit is defamatory; whether Chrysler Credit has a qualified privilege to disseminate defamatory credit information; whether, if such a privilege exists, Chrysler Credit abused the privilege; and, whether the alleged defamatory statement was made with malice or reckless disregard for the truth so as to negate any defense of privilege.

Record at 120. Therefore, the uncontroverted fact is Chrysler Credit reported the transaction as "RVD" although Merchants Association, not a

## DISCUSSION

Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Indiana Rule of Trial Procedure 56. (C); *Allstate Insurance Company v. Meek* (1986), Ind. App., 489 N.E.2d 530. In order to determine whether a genuine issue of fact exists, the court accepts as true all facts alleged by the nonmoving party and resolves any doubt as to the existence of a genuine issue of fact against the nonmoving party. *Gibbs v. Douglas M. Grimes P.C.* (1986), Ind.App., 489 N.E.2d 638. The party seeking summary judgment has the burden of establishing the lack of disputed material facts. *Thiele v. Faygo Beverage Inc.* (1986), Ind. App., 489 N.E.2d 562. Although Boydston alleges material facts are in dispute on several issues, we address only those related to privilege because they are dispositive of this case.

■ The principle of qualified privilege has its origins in the common law and has long been recognized in Indiana. *Indiana National Bank v. Chapman* (1985), Ind. App., 482 N.E.2d 474; *Elliot v. Roach* (1980), Ind.App., 409 N.E.2d 661; *Weenig v. Wood* (1976), 169 Ind.App. 413, 349 N.E.2d 235; *Henry v. Moberly* (1892), 7 Ind.App. 490, 33 N.E. 981. Within the rule of qualified privilege our courts have recognized a "common interest" privilege. A communication is protected as privileged if made in good faith on any subject in which the communicator has an interest or in reference to which he has a public or private duty, and if the communication is made to a person having a corresponding interest or duty. *Indiana National Bank,* 482 N.E.2d at 479; *Puckett v. McKinney* (1978), 175 Ind.App. 673, 373 N.E.2d 909. The protection arises from the need for full and unrestricted communication regarding matters on which the parties have a common interest or duty. *Shallenberger v. Scoggins-Thomlinson Inc.* (1982), Ind. App., 439 N.E.2d 699; 50 Am.Jur.2d *Libel*

party to this lawsuit, carried the transaction on *its* early reports as "RVN".

*and Slander* § 195, at 698–99 (1970). Chrysler Credit argues the common interest privilege protects the credit reports it sends to Merchants Association; Boydston argues a qualified privilege does not attach to such reports.

▉ The existence of a qualified privilege is a matter of law for the court, unless facts giving rise to the privilege are disputed. *Lawson v. Howmet Aluminum Corp.* (1983), Ind.App., 449 N.E.2d 1172; *Shallenberger*, 439 N.E.2d at 707. Although our courts have previously upheld the defense of qualified privilege in a variety of situations, including communications between employers and employees, business partners, and members of fraternal or social organizations, an Indiana court has not addressed the applicability of a qualified privilege to statements made by creditors to credit agencies. For the reasons stated below, we hold a privilege exists with regard to such statements.

We live in a credit society. Consumers, businesses, and governmental agencies operate on credit; credit is a major component of our nation's economic system. Borrowers desire to establish a credit history to facilitate future credit. Financial institutions require credit information on prospective borrowers to assess credit worthiness and to make informed lending decisions. Lenders obtain credit information on prospective customers by agreeing to report credit information on their existing customers. Because credit reports, such as the one Chrysler Credit provided to Merchants Association, are part of a system which facilitates the flow of credit information, a necessary component of credit financing, we hold a privilege generally attaches to credit reports. However, because of the important role credit information plays in the creditor's decision-making process, the debtor has an equally important interest in the accuracy of the credit report. For that reason, we hold the privilege which generally attaches to credit reports is a qualified privilege.

▉ With regard to the specific reports at issue, it is undisputed the credit report on Boydston was issued by Chrysler Credit

as a part of its regular reports to Merchants Association. As a member and subscriber of Merchants Association, Chrysler Credit had an interest in and private duty to submit credit information regularly on its customers to Merchants and Merchants had a common interest in receiving such information. The subject matter of the report, Boydston's credit with Chrysler Credit, was information Chrysler had a private duty to report to Merchants. Thus, Chrysler made a prima facie showing it had a qualified privilege to publish the allegedly defamatory statement to Merchants.

▉ Having determined a qualified privilege arose, however, does not end our inquiry. A qualified privilege does not change the actionable quality of the words published but only rebuts the element of malice implied by law from the making of a defamatory statement. *Shallenberger*, 439 N.E.2d at 707. The protection afforded by a qualified privilege may be lost (*i.e.*, the elements of the defense are not established) if there is a showing the communicator was primarily motivated by feelings of ill will, if there is excessive publication of the defamatory statement, or if the statement is made without belief or grounds for belief in its truth. *Ernst v. Indiana Bell Telephone* (1985), Ind.App., 475 N.E.2d 351, 356; *Lawson*, 449 N.E.2d at 1175.

Boydston does not contend there was excessive publication of the credit report by Chrysler Credit. He does argue he presented facts from which a trier of fact could reasonably infer Chrysler Credit acted with actual malice or demonstrated reckless disregard for the truth or falsity of the statement. First, he asserts the code "RVD" means a repossession or derogatory credit rating within the credit industry. He contends a fact finder could imply from Chrysler Credit's position in the credit industry and its familiarity with the code that it knew or should have known the credit community would interpret the code to mean a repossession had occurred. Such knowledge or reason to know supports the inference of malice, as well as reckless disregard for the truth or falsity

of the code, and, therefore, the trial court erred in granting summary judgment.

■ Boydston's entire argument hinges upon his initial claim the credit code "RVD" describes a repossession or a derogatory credit rating with the credit industry.[2] However, he fails to present evidence establishing this proposition. According to Merchants Association's reporting form, the code "RVD" means "Returned voluntarily. Paid by dealer." In addition, the association's reporting form contains the codes "RLD", "RLP", "RPO", and "RRE", which mean, respectively, "Repossession. Paid by dealer," "Repossession. Proceeds applied to debt," "Repossession," and "Repossession. Redeemed." The facial meaning of "RVD," coupled with the existence of four other specific codes describing repossession, shows "RVD" describes something other than a repossession in the credit industry. Nevertheless, Boydston asserts the code is interpreted by the credit community as a repossession and in support of this claim he presented three letters from creditors denying him credit and an affidavit from Robert Fisher, vice president in charge of the credit card department of American Fletcher.

One denial letter states Boydston's credit application was rejected based upon information obtained from Merchants Association without further specificity; a second gives "slow credit" as the reason for denying credit. (Record at 106, 107). The letter from AFNB specifically gives "repossession" as the reason for denying Boydston credit to Boydston does not support Boydston's conclusion the credit community interprets "RVD" as a repossession. The affidavit states in pertinent part:

"3. That in my capacity as Vice President, I am familiar with the interpretations that *my department* places upon the credit history remark code from the Merchants Association, namely RVD, and *our department* interprets said code as a repossession or as a derogatory credit report in some cases. I am also aware that our Bank Card Credit Representatives interpret the code RVD differently and that it does not mean a repossession had occurred to some of our Bank Card Representatives. Although our representatives have more than one way of interpreting the RVD code, we did interpret the RVD designation in this case as a repossession.

. . . . . .

5. That American Fletcher National Bank credit card department refused to approve Mr. Boydston's credit card application because we interpreted that the subject of Mr. Boydston's credit transaction with Chrysler Credit Corporation was repossessed."

Record at 101–102 (emphasis added). Fisher's affidavit does not address the meaning of the credit report code "RVD" in the industry generally. Rather it states only the interpretation given by his department. In fact, Fisher states AFNB's bank card representatives "interpret the code RVD differently ... [and] have more than one way of interpreting the RVD code." (Record at 101). He acknowledges the code "does not mean a repossession has occurred to some of our Bank Card representatives" (Record at 101). Because Fisher's affidavit reveals the lack of a general meaning of the "RVD" code in his own bank, let alone the industry, Boydston failed to present facts which reasonably supported the inference Chrysler Credit knew or had reason to know other creditors would interpret the code as a repossession. Hence, there is no basis from which a trier of fact could reasonably infer reckless disregard for the truth or falsity of the code or infer malice from the use of the code itself.

Boydston also argues malice can be inferred from Chrysler Credit's knowledge the report would be disseminated to third parties, its knowledge of Boydston's revocation and dispute with Eastgate, Chrysler Credit's failure to report the transaction as "DRP" which means "Disputes, resolution pending," and from the potential for injury

---

**2.** In his appellate brief Boydston includes the code "RVN" as a factor in his argument. However, this inclusion is inappropriate as to Chrysler Credit inasmuch as it reported the transaction to Merchants Association as "RVD". *See* footnote 1 *supra.*

defamatory credit information may have on consumers. Taking all of these facts to be true, they are relevant to the question of malice only if Boydston had shown at least a genuine dispute existed to whether the credit code used has a derogatory meaning in the credit industry. Having failed to establish this, it is irrelevant Chrysler knew the report would be disseminated to third parties, knew of the dispute with Eastgate, failed to use a different code, or knew the defamatory credit information might cause injury. Therefore, Chrysler Credit met its burden of showing the lack of material fact as to the existence of the qualified privilege. The trial court properly granted summary judgment.

Judgment affirmed.

SULLIVAN, J., concurs.

ROBERTSON, J., concurs in result.