William A. POWERS, Appellant
(Defendant Below),

v.

James E. GASTINEAU, Appellee
(Plaintiff Below).

No. 11A04–8912–CV–571.

Court of Appeals of Indiana,
Third District.

March 25, 1991.

William H. Kelley, James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for appellant.

Frank B. Harshey, Merriman & Harshey Associates, Indianapolis, John J. Thomas, David O. Thomas, Thomas & Thomas, Brazil, for appellee.

HOFFMAN, Presiding Judge.

Defendant-appellant Dr. William A. Powers appeals the trial court's judgment entered on a jury verdict in favor of plaintiff-appellee James E. Gastineau, awarding him $75,000.00 in compensatory damages and $100,000.00 in punitive damages on his complaint for defamation (libel).

The facts relevant to this appeal disclose that in the mid–1980's in Greene County, Indiana, a dispute over the regionalization of services for developmentally disabled persons prompted a division of those services between two organizations, the Greene County Area Rehabilitation Center (GCARC) and the Greene County Developmental Services Center (GCDSC). Defendant's wife was on the Board of Directors of the GCARC, and plaintiff was the facility director of the GCDSC. In 1986, both organizations applied with the Greene County Board of Commissioners for funding. At his wife's request, defendant wrote the Greene County commissioners and council members to solicit support for the GCARC. Two of the letters stated as follows:

"Since I helped raise the funds to build the building in Lyons; [sic] I am very aware of J Gastineau & his camp followers. He is a 1st rate lunatic & it would be to everyone's misfortune if his group is allowed to exist.

GCARC has a 1st rate board of directors & they know what they are doing & deserve everyones [sic] support.

Sincerely

/s/ Dr. Bill Powers

Dear Mr. Prow

Everyone here in Lyons knows J Gastineau & his revolt away from GCARC. He is a real lunatic & it would be to everyones [sic] misfortune if they were to be allowed to continue to exist.

GCARC has a 1st rate board of directors & they know what they are doing & deserve everyones [sic] support.

Sincerely

/s/ Dr. Bill Powers"

On July 1, 1986, the Greene County Board of Commissioners held a public meeting to discuss the allocation of county funds. During the meeting, the commissioners discussed defendant's letters and questioned plaintiff as to his mental health. Several subsequent newspaper articles contained reprints of the letters or mentioned the lunatic comment.

Plaintiff filed a complaint for defamation against defendant and the Greene County Board of Commissioners on March 9, 1987. At the stipulation of the parties, the trial court dismissed the action against the commissioners on October 13, 1987. A jury trial commenced on August 31, 1989, and ended on September 5, 1989, with a verdict for plaintiff. This appeal ensued.

Defendant raises six issues for review which this Court restates as five:

(1) whether the evidence was sufficient to support the jury's verdict;

(2) whether the evidence was sufficient to support the award of punitive damages;

(3) whether the evidence was sufficient to support the award of compensatory damages;

(4) whether the trial court erred in refusing Defendant's Instructions Nos. 2 and 7; and

(5) whether the trial court erred in refusing to admit Defendant's Exhibit E, a collection of articles from various Indiana newspapers.

Defendant first claims the evidence was insufficient to support the jury's verdict. In reviewing the sufficiency of evidence in a civil case, this Court will decide whether there is substantial evidence of probative value supporting the trial court's judgment. We neither reweigh the evidence nor rejudge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. Only if there is a lack of evidence, or evidence from which a reasonable inference can be drawn, on an essential element of the plaintiff's claim will we reverse the trial court. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904.

Specifically, defendant claims the words he wrote were not defamatory. An oral or written statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Chestnet v. K–Mart Corp.* (1988), Ind.App., 529 N.E.2d 131, 135. The initial inquiry as to whether a statement is defamatory is a

question of law for the trial court; however, if a statement is reasonably susceptible of either a defamatory or non-defamatory interpretation, a question of fact is presented. *Id.*

■ In his letters, defendant referred to plaintiff as a "lunatic" which *Webster's Third New International Dictionary* (1976) defines as follows:

"a person affected with lunacy or of unsound mind; one who is wildly eccentric; one capable of crazy actions or extravagances; crackpot; a person whose abnormal mental condition renders him incapable or irresponsible before the law."

Implying that a person is of unsound mind or a crackpot would certainly harm that person's reputation and deter others from associating with him. However, at trial, defendant testified that when he used the word "lunatic," he meant foolish, not insane. Implying that a person is foolish would not necessarily harm that person's reputation or deter others from associating with him. Defendant's statements were reasonably susceptible of either a defamatory or non-defamatory interpretation; therefore, a question of fact was presented.

■ In the alternative, defendant argues that even if his statements were defamatory, plaintiff failed to show they were made with malice so as to negate the defense of qualified privilege. Whether a statement is protected by a qualified privilege is a question of law for the court unless the facts are in dispute. *Boydston v. Chrysler Credit Corp.* (1987), Ind.App., 511 N.E.2d 318, 321. A statement is protected as privileged if made in good faith on any subject in which the communicator has an interest or in reference to which he has a public or private duty, and if made to a person having a corresponding interest or duty. *Id.* at 320. A qualified privilege does not change the actionable quality of the published words; it merely rebuts the malice implied by law from the making of a defamatory statement. *Id.* at 321. The protection of the privilege may be lost if the plaintiff shows that the communicator was primarily motivated by feelings of ill will, if there was excessive publication of the defamatory statement, or if the statement was made without belief or grounds for belief in its truth. *Id.*

The trial court determined as a matter of law that a qualified privilege existed in the instant case; therefore, plaintiff had to show ill will on defendant's part, excessive publication, or that defendant had no grounds for belief in the truth of his statements. Both defendant and plaintiff testified that there was never any ill will between them; however, defendant also testified that he had no basis for saying plaintiff was mentally or emotionally unstable. Consequently, plaintiff overcame the qualified privilege, and the evidence was sufficient to sustain the jury's verdict.

■ Additionally, defendant argues that he should not be liable for the republication of his letters at the public board meeting or in the local newspaper. It is well established that the originator of a defamation is not liable for any repetition or republication thereof which is not the natural consequence of his act or which results from the independent and unauthorized act of another. 18 I.L.E. *Libel and Slander* § 43. Here, defendant wrote seven commissioners and three council members prior to a highly-publicized meeting in order to influence their allocation of county funds. The meeting was open to the public, and several members of the press attended. Although defendant may not have authorized the republication of his letters, republication was a natural consequence of his actions; therefore, defendant was liable for same.

■ Defendant next challenges the jury's award of $100,000.00 in punitive damages to plaintiff. Punitive damages must be supported by clear and convincing evidence. *Watson v. Thibodeau* (1990), Ind.App., 559 N.E.2d 1205, 1210. The evidence must overcome the presumption that the defendant's conduct was merely negligent or the result of some honest error. *Id.* Punitive damages are recoverable only upon evidence that the defendant acted with malice, fraud, gross negligence, or oppression which did not result from mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or

other human failing. *Id.* The defendant is cloaked with the rebuttable presumption that his actions, though perhaps tortious, were nevertheless noniniquitous human failings. *Id.*

 Specifically, defendant contends the evidence was insufficient to support the award of punitive damages. When reviewing the sufficiency of evidence, we will affirm a judgment of punitive damages if, considering only the probative evidence and the reasonable inferences drawn therefrom, without reweighing the evidence or rejudging witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Id.* The evidence in the instant case showed that, although defendant had no basis for saying plaintiff was mentally or emotionally unstable, the purpose of his letters was to solicit funds for his wife's organization, not to defame plaintiff. Clearly, defendant's efforts went beyond what was necessary; however, any malice on defendant's part resulted from overzealousness or other noniniquitous human failing and was not so obdurate as to require punishment for the benefit of the general public. The clear and convincing evidence was insufficient to support an award of punitive damages.[1]

 Defendant also challenges the jury's award of $75,000.00 in compensatory damages to plaintiff. In reviewing a challenge to a damage award, we will consider only the evidence favorable to the award. *Upchurch v. Henderson* (1987), Ind.App., 505 N.E.2d 455, 457. To support an award for compensatory damages, the evidence must show facts which afford a legal basis for measuring the plaintiff's loss. *Id.* The damages must be ascertainable in a manner other than by mere speculation, conjecture, or surmise, and must be referenced to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances. *Id.* This Court will not disturb the decision of the trier of fact unless the damages appear to be grossly excessive. *Erdman v. White* (1980), Ind.App., 411 N.E.2d 653, 659.

Defendant maintains the award was not within the scope of the evidence because plaintiff continued to work after the incident and did not seek any medical or psychological treatment. However, both plaintiff and his wife testified that the statements caused plaintiff a great deal of embarrassment, humiliation, and stress. Moreover, one of plaintiff's employees testified that there were rumors after the incident that defendant's statements were correct. Damages for loss of reputation are available in an action for libel because loss of reputation is a foreseeable consequence of publication of libelous statements. *Greives v. Greenwood* (1990), Ind. App., 550 N.E.2d 334, 338. The award for compensatory damages was within the scope of the evidence.

 Defendant further alleges the following instruction on compensatory damages was erroneous:

"Final Instruction No. 16

In a defamation action, there are generally two classes of compensatory damages. The first is general damages, injury to the plaintiff's reputation and standing in the community, personal humiliation, and mental anguish and suffering, which damages the law presumes to be the natural, proximate, and necessary result of publication of libelous statements. The second class is special damages, pecuniary in nature, which damages are not assumed to be necessary or inevitable but must be shown by evidence to have been actually incurred as a result of the wrongful act.

If you find for the Plaintiff, then you must determine, from the evidence and your experience, how much damage, if any, has beren [sic] suffered by the Plaintiff. That amount should then be awarded the Plaintiff on your verdict form."

---

1. Defendant also contends Final Instructions Nos. 18 and 19 on punitive damages were erroneous; however, due to our reversal of the award of punitive damages, any error in the instructions was harmless.

Specifically, defendant alleges the first paragraph of the instruction was an improper statement of law; however, the language comes from this Court's opinion in *Erdman*. *Id.* at 658–659. While there may have been no evidence of special damages (lost wages, medical bills, etc.) in this case, the instruction does not require the jury to find either special or general damages; it merely defines them. Final Instruction No. 16 was not erroneous.

Next, defendant contends the trial court erred in refusing his Instruction No. 2 on understanding words according to their plain meaning and his Instruction No. 7 on truth as a defense.[2] When reviewing a trial court's refusal of a tendered instruction, this Court will find no error if another instruction covered the substance of the tendered instruction. *Get–N–Go, Inc. v. Markins* (1990), Ind., 550 N.E.2d 748, 751. Final Instruction No. 7 covered the substance of both Defendant's Instructions Nos. 2 and 7; therefore, the trial court did not err in refusing them.

▆ Lastly, defendant claims the trial court erred in refusing to admit his Exhibit E, a collection of articles from various Indiana newspapers, on the grounds of hearsay. Hearsay is an out-of-court statement, oral or written, offered in court to prove the truth of the matters asserted therein. *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1231. By their very nature, newspaper articles are hearsay and, for that reason, are seldom proper evidence to prove any fact except the bare fact of their publication. *Feliciano v. State* (1984), Ind., 467 N.E.2d 748, 749. Defendant argues that he offered the exhibit, not to prove the truth of the matters asserted therein, but to show the circumstances under which he wrote the letters. Considering that there was abundant testimony regarding those circumstances and no dispute that publication occurred, any error in the court's refusal to admit the exhibit was harmless.

2. Defendant also contends the trial court erred in refusing his Instruction No. 6; however, he failed to present any argument in support of that contention as required by Ind. Appellate

▆ Defendant also argues that the exhibit falls under the business records exception to the rule against hearsay. In order for a document to be admitted into evidence under the business records exception, the party offering the document must show that it is an original or first permanent entry made in the routine course of business at or near the time of the recorded transaction by one having both personal knowledge of the matters recorded and a business duty to record them. *Weisman v. Hopf–Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1227. Furthermore, the document must be identified by its entrant or one under whose supervision the record is kept. *Id.* at 1228.

▆ Ron Dietz, the publisher of the *Linton Daily Citizen*, testified that the articles in the exhibit came from an office file which he and his staff maintained in the ordinary course of business. However, Dietz also testified that he did not know who had compiled the exhibit and that the exhibit contained several articles from newspapers other than the *Linton Daily Citizen*. Even assuming the articles from the *Linton Daily Citizen* qualified under the business records exception, the articles from the other newspapers did not because there was neither personal knowledge nor a business duty to record them. Where only part of an exhibit's contents qualify under the business records exception, a trial court does not err in refusing the entire exhibit. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652, 659. There was no reversible error.

The judgment of the trial court is affirmed in all parts except the award of punitive damages which this Court reverses for lack of clear and convincing evidence in support of same.

CONOVER, J., concurs.

MILLER, J., concurs in part and dissents in part with opinion.

Rule 8.3(A)(7). His failure to do so constitutes waiver of the issue for our review. *National By–Products, Inc. v. Ladd* (1990), Ind.App., 555 N.E.2d 518, 520.

MILLER, Judge, concurring in part and dissenting in part.

I concur with the majority, except for the reversal of punitive damages. I disagree with the majority's conclusion that a reasonable trier of fact could not find punitive damages by clear and convincing evidence and that the evidence was insufficient to support the jury's award of such damages. I would affirm the judgment of the trial court in all respects.

Punitive damages are designed to punish the wrongdoer and deter similar conduct in the future. *Peru Daily Tribune v. Shuler* (1989), Ind.App., 544 N.E.2d 560. The majority finds that the jury could not have found any malice on Dr. Power's part except that resulting "from overzealousness or other noniniquitous human failing and that his actions were not so obdurate as to require punishment for the benefit of the general public." Op. at 1025. Iniquitous is defined by *Webster's Third New International Dictionary* 1163 (1976), as unjust, wicked, vicious. Presumably, a "noniniquitous human failing" would mean actions which are not unjust, not wicked and not vicious.

The jury was presented with the following evidence: William A. Powers, M.D., Chief of Staff and Medical Director of the Greene County Hospital, is held in high regard in the community. James Gastineau has cerebral palsy, complicated by damage in the removal of a brain tumor in his youth. He suffers from visible impediments in his speech, gait, balance, and vision. Despite his physical limitations, Gastineau attended Marian College in Indianapolis, graduating with majors in psychology, political science and completed 35 hours toward an MBA. Gastineau and Powers had been boyhood friends and Gastineau had, in the past, been Dr. Powers' patient. A jury could infer that Powers was aware of Gastineau's handicaps. Powers admitted that he knew some people equate the word "lunatic" with "insane" and he admitted that he had no basis for imputing any emotional or mental problems to Gastineau.

The majority seems to base its reasons for reversing the punitive damage award on the fact that Dr. Powers said he had *no ill will* toward Gastineau; however, the jury was entitled to infer that Powers' actions spoke louder than words. Actual malice may often be thought of in terms of *ill will*, "but the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which the privilege exists." *Weenig v. Wood* (1976), 169 Ind.App. 413, 349 N.E.2d 235, 249. The word 'malicious' means the absence of lawful excuse, unprivileged, not employed under circumstances which excuse them. *Id.* In other words, malice is publishing matter with the knowledge that it is false or with reckless disregard as to whether it is false or not. *Display Fixture Co. v. R.L. Hatcher, Inc.* (1982), Ind.App., 438 N.E.2d 26.

Apparently, Powers wrote the letters describing Gastineau as a "real lunatic" and a "first rate lunatic" in an attempt to influence the County Commissioners to fund Mrs. Powers' organization. A reasonable jury could have found—as this jury did—that his actions were more than negligent, more than merely overzealous and more than the result of a "noniniquitous" human failing, but instead his actions were an unnecessary, unjust, and vicious personal attack.

The jurors could have found that Dr. Powers abused his position of authority in the community by a personal attack on his former patient and former friend in an attempt to disparage the organization directed by Gastineau and to influence the commissioners to support his wife's organization. Dr. Powers could just as easily have influenced the commissioners by pointing out the merits of the GCARC or by citing specific reasons for his opinion that Gastineau's past activities indicated that he was "foolish." Under the circumstances, the jurors were entitled to find that labeling Gastineau a "first rate lunatic" was unnecessary, unjust and that such

conduct should be punished and deterred by the award of punitive damages.