Janet L. OLSSON, Appellant
(Plaintiff Below),

v.

INDIANA UNIVERSITY BOARD OF
TRUSTEES, Appellee
(Defendant Below).

No. 36A04–9009–CV–439.

Court of Appeals of Indiana,
Fourth District.

May 23, 1991.

Vernon J. Petri, Vernon J. Petri, P.C., Indianapolis, Michael L. Hanley, Hanley & Moore, Indianapolis, for appellant.

Ronald L. Chapman, Cotner, Andrews, Mann & Chapman, Bloomington, for appellee.

CONOVER, Judge.

Plaintiff–Appellant Janet Olsson (Olsson) appeals the trial court's grant of motion for summary judgment in favor of Defendant–Appellee Indiana University Board of Trustees (IU).

We affirm.

Olsson presents one issue for our review which we restate as:

whether the trial court erred in granting IU's motion for summary judgment on Olsson's libel claim.

During the school year of 1980–1981, Olsson was a student in IU's School of Education. As part of her training, Olsson was assigned to Ellettsville Elementary School as a student teacher. Her supervising teacher was Janice Stockton (Stockton), and her university supervisor was Linda Null (Null).

According to IU's Handbook for Student Teachers, Null was to make biweekly visits to discuss Olsson's progress. The majority of the visits were to be for instructional observation and were to be the focus for pre and post observation conferences. During the semester, Null performed her duties as required nearly biweekly, personally observing Olsson's teaching three times and holding one conference with Olsson. At the end of the semester, Stockton submitted a final evaluation of Olsson's teaching abilities. Indiana University issued Olsson a passing grade in student teaching.

Toward the end of the semester, Stockton was hospitalized, and Olsson took over her classroom for two weeks.

In April, Olsson filed a written application for a full time teaching position with Steve Kain (Kain), the superintendent of the Richland–Bean Blossom School Corporation. She did not graduate in May because she needed to complete an art course over the summer but was qualified to teach full time before the 1981 fall semester.

In July, 1981, James Lundy (Lundy), principal of Ellettsville Elementary School, became aware of a vacancy for a fourth grade teacher for the next school year. He telephoned Null and asked her for written evaluations of Olsson's and another student teacher's overall teaching ability. In response to this request, Null wrote a letter which described Olsson as a marginal student teacher. She did not recommend

Olsson for a full-time teaching position. Lundy did not hire Olsson or the other student teacher. IU did not keep a copy of Null's letter to Lundy in its placement files.

In September, 1981, Olsson asked Kain why she did not receive an interview or a job in his school corporation. Kain then showed Olsson the letter Null had written to Lundy.

Olsson has continued to apply for teaching positions at other schools but has been unable to obtain a position. In November, 1982, Olsson filed a defamation action, based on Null's letter against IU and the State of Indiana.[1] In April, 1986, the trial court granted IU summary judgment. However, the trial court granted Olsson's motion to correct errors in August, 1986. Then in May, 1990, the trial court granted IU's motion to reinstate summary judgment. Olsson appeals.

Olsson argues the trial court erroneously granted summary judgment because the following material issues of fact exist: 1) whether Null's letter was defamatory; 2) whether IU has a qualified privilege to disseminate defamatory information about Olsson's teaching performance; 3) whether, if such privilege exists, IU abused the privilege; 4) whether the alleged defamatory statement was made with malice or reckless disregard for the truth so as to negate any defense of privilege; 5) whether Olsson waived any right of action by consenting to publication when she enrolled in the School of Education, and 6) whether Olsson suffered damages as a result of the letter when it was alleged to be libelous per se.[2]

Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). In order to determine whether a genuine issue of fact exists, the court accepts as true all facts alleged by the nonmoving party and resolves any doubt as to the existence of a genuine issue of fact against the nonmoving party. The party seeking summary judgment has the burden of establishing the lack of disputed material facts. *Boydston v. Chrysler Credit Corp.* (1987), Ind.App., 511 N.E.2d 318, 320. The burden to show reversible error on appeal is on the appellant. We indulge all reasonable presumptions in favor of the trial court. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279, 281, *reh. denied.*

Words falsely written which tend to injure or prejudice any person in her trade, profession or business are defamatory. *Big Wheel Restaurants, Inc. v. Bronstein* (1973), 158 Ind.App. 422, 302 N.E.2d 876, 879. Libel is malicious defamation expressed in writing. 18 I.L.E. Libel and Slander § 1, at 449 (1959).

Whether a statement is defamatory is a question of law for the court. *Cochran v. Indianapolis Newspapers, Inc.* (1978), 175 Ind.App. 548, 372 N.E.2d 1211, 1216. Only if the statement can be interpreted as having two meanings, one libelous and one not, should the case go to the jury. *Cochran, supra,* 372 N.E.2d at 1217.

Notwithstanding the possible defamatory nature of a communication, a communication may be protected by a qualified privilege if a need exists for full and unrestricted communication regarding matters on which the parties have a common interest or duty. *Shallenberger v. Scoggins–Tomlinson Inc.* (1982), Ind.App., 439 N.E.2d 699, 707.

Under the qualified privilege rule (or common interest rule), a communication is privileged if made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, whether legal, moral, or social, if made to a person having a corresponding interest or duty. *Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626, 628–629. This privi-

---

1. In May, 1983, the trial court dismissed the action against the State of Indiana.

2. We need not address the question of consent or damages since we have determined the letter from Null is protected under the qualified privilege rule.

lege applies to communications concerning the qualifications of a school teacher. *Puckett v. McKinney* (1978), 175 Ind.App. 673, 373 N.E.2d 909, 912.

■ The existence of a qualified privilege is a matter of law for the court, unless facts giving rise to the privilege are disputed. *Boydston, supra,* at 320. The issue of abuse of privilege should only be submitted to the jury if there is sufficient evidence to raise the issue, and if different inferences and conclusions reasonably may be drawn from the evidence. *Shallenberger, supra,* at 707.

■ Null's letter described Olsson's strengths and weaknesses. It described her as enthusiastic, willing to work, and comfortable with parents. Her weaknesses included: faulty grammatical skills, lack of skill in organizing, planning, and implementing lesson plans, poor discipline, inflexibility, and resistance to criticism. (R. 109).

IU has a responsibility in preparing and evaluating future schoolteachers. Lundy has a common interest to select the best possible teachers. The subject matter of the letter was information IU had a duty to report to school administrators. IU made a showing of qualified privilege in the trial court.

■ The final question is whether IU has abused its qualified privilege. Once the existence of such a privilege is established, the burden is on the plaintiff to prove that it has been abused. *Puckett, supra,* 373 N.E.2d at 911–912. Qualified privilege may be lost if: a) there is a showing the communicator was primarily motivated by feelings of ill will, b) there is excessive publication of the defamatory statement, or c) the statement is made without belief or grounds for belief in its truth. *Boydston, supra,* at 320.

Olsson's assertions of bad faith, excessive publication, and lack of grounds for belief in the truth of the letter are mischaracterizations of the record. A nonmovant in a motion for summary judgment proceeding may not rest on allegations or denials, but must respond with affidavits, or other evidence, setting forth specific facts showing there is a genuine issue in dispute. *Willsey v. Peoples Federal Sav. & Loan Ass'n of East Chicago* (1988), Ind.App., 529 N.E.2d 1199, *trans. denied.*

Olsson argues Null was motivated by feelings of ill will. She asserts several instances prove Null was motivated by malice. She claims Null was dishonest in the letter in representing how much time she actually spent observing Olsson in the classroom.[3] The letter does not claim Null spent one and one-half hours biweekly with Olsson but rather Null spent approximately this much time *in toto,* for all activities including reviewing Olsson's lesson plans, journals and other materials. (R. 109). Olsson also infers bad faith on IU's part because there are no other unfavorable evaluations. However, the record reveals several unfavorable reports. In March, after observing Olsson in the classroom, Null prepared a written evaluation criticizing the content and scope of the lessons and the instructional techniques Olsson had used in class. (R. 276). In the final semester evaluation form, Stockton gave Olsson a significantly lower than average numerical rating. (R. 217). The satisfactory grade Olsson received in the course cannot be assumed to be a personal recommendation of her teaching ability. Olsson presented no material facts to the trial court showing Null was primarily motivated by feelings of ill will.

Olsson urges Null made her statements without grounds for belief in their truth. "Lack of grounds for belief" has been equated to reckless disregard for truth. *Ernst v. Indiana Bell Telephone Co.*

**3.** Null's letter read in pertinent part:
I was Janet's University Supervisor for Semester II, 1980–81. During this sixteen week period, I made biweekly visits of approximately one and one-half to two hours in length. At each visit I reviewed lesson plans, student journal, and any materials prepared by Janet. I, also, observed actual classroom instruction, critiqued the instruction, and conferenced with Janet about what I saw happening in the classroom. . . .
(R. 109).

(1985), Ind.App., 475 N.E.2d 351, 356. As discussed above, the record indicates Null wrote the letter based on her experience as an educator and her personal observations and interactions with Olsson. While Olsson may dispute Null's ability to form an accurate opinion after only three classroom visits, she presented no material facts from which a trier of fact could reasonably infer reckless disregard for the truth, falsity of the letter, or malice.

■■■ Olsson claims there was excessive publication of the letter. Olsson urges IU permitted prospective employers to see the letter. This assertion is based on the fact she gave the name of the school where she student taught when she applied for various positions. However, there is no evidence that anyone except Null, Lundy, and Superintendent Kain saw the letter. IU did not keep a copy of Null's letter. (R. 154). No potential employer has ever contacted Lundy with questions about Olsson's teaching ability. (R. 359).

■■■ Olsson also contends pursuant to the Educational Rights and Privacy Act of 1974, a student has a right to determine which recommendations will become part of the placement files. She states IU violated this right by using Null's letter without her permission. She relies on the handbook's summary of federal law. (R. 33). A perusal of the actual statute indicates no such violation.

The Family Educational Rights and Privacy Act of 1974, at 20 U.S.C. § 1232g(a)(1)(A), 1232g(a)(2), 1232g(b)(1) & (2), and 1232g(d) denies federal funds to educational institutions which have a policy of denying students the right to inspect and review "education records" or of releasing such records without the student's permission. 20 U.S.C. 1232g(a)(4)(A) defines "education records" as materials "maintained by an educational agency or institution or by a person acting for such agency or institution."

IU did not maintain a copy of Null's letter in its files. Thus, the letter does not constitute an "educational record" under the act. There is no basis for concluding IU violated federal law in its handling of Null's letter.[4] These facts do not support an inference of bad faith.

IU has met its burden of showing the lack of material fact as to the existence of qualified privilege, and Olsson has made no showing of abuse of that privilege by IU as to her. The trial court properly granted summary judgment.

Affirmed.

MILLER, J. concurs.

STATON, J. dissents with separate opinion.

STATON, Judge, dissenting.

I respectfully dissent. I believe the majority misreads the letter written by Null. Where the letter states that during the sixteen week semester, Null "made biweekly visits of approximately one and one-half to two hours in length," it is clear that Null represented that she spent one and one-half to two hours *each visit*, not *in toto*, as the majority asserts. Null admitted that she spent nowhere near that much time in observation of Olsson's student teaching experience.

Moreover, Null gave a favorable evaluation of Null midway through the semester, stating that Olsson's classroom management was excellent, that she was well organized, and that she presented her lessons extremely well. Olsson was issued a satisfactory grade in student teaching, a grade which Null had the responsibility of assigning. Finally, Olsson received favorable recommendations from others.

Summary judgment is not a substitute for a trial of the disputed factual issues. *Greives v. Greenwood* (1990), Ind.App., 550 N.E.2d 334. It should not be granted merely because it appears that the plaintiff will not succeed at trial. *Id.* Null's misstatement in the letter, the negative flavor of the letter, and the fact that Null previ-

**4.** No private right of action exists under Family Educational Rights and Privacy Act. *Tarka v. Franklin*, (5th Cir.1989), 891 F.2d 102, *certiorari* denied (1990), —— U.S. ——, 110 S.Ct. 1809, 108 L.Ed.2d 940, *reh. denied* —— U.S. ——, 110 S.Ct. 2605, 110 L.Ed.2d 285.

ously gave Olsson favorable evaluation could very well raise an inference of ill will in the minds of the triers of fact. Since an issue of fact remains to be determined, summary judgment was improper. I would reverse and remand for a trial on the merits.