Becky **CHAMBERS**, Appellant–Plaintiff

v.

**AMERICAN TRANS AIR, INC.,** Laura **Knowles and John Piburn,** Appellees–Defendants.

No. 49A02–9010–CV–585.[1]

Court of Appeals of Indiana, Fifth District.

Sept. 4, 1991.

---

1. This case has been diverted to this office by order of the Chief Judge.

Gordon Dempsey, Indianapolis, for appellant-plaintiff.

Gregory J. Utken, Todd M. Nierman, Baker & Daniels, Indianapolis, for appellees-defendants.

RUCKER, Judge.

Becky Chambers filed suit for defamation against her former employer, American Trans Air, Inc., and two former supervisors, Laura Knowles and John Piburn. The trial court entered summary judgment against Chambers and she appeals. The sole issue presented for our

review is whether the trial court erred in granting summary judgment in favor of American Trans Air, Inc., Laura Knowles and John Piburn. Finding no error, we affirm.

## I.

Chambers was employed by American Trans Air, Inc. (ATA) from October 1982 to July 1987. During part of that time Knowles was Chambers' supervisor and Piburn was Knowles' supervisor.

Chambers resigned from ATA after a dispute over working conditions. She then sought new employment. When asked by prospective employers the names of her supervisors at ATA, Chambers named Knowles and Piburn as references. Chambers began experiencing difficulty in finding new employment and the pattern of responses Chambers was receiving from prospective employers led her to become suspicious of the ATA references.

In an effort to determine the nature of the references ATA was providing prospective employers, Chambers instructed her mother to call ATA, represent herself as a prospective employer and ask to speak with Chambers' supervisors. Chambers was aware of ATA policy that inquiries concerning former employees should be directed to the company's personnel department. However, Chambers' instructions to her mother were tailored to avoid having the inquiries forwarded to personnel.

Chambers' mother was able to speak with Knowles and to ask specific questions concerning Chambers. In response Knowles made the following statements: "could work without supervision on occasion," "did not get along well with other employees," and "was somewhat dependable."

At Chambers' request, Chambers' boyfriend also called ATA, represented himself as a prospective employer and spoke to Piburn. In response to specific questions posed to him Piburn replied that Chambers: "does not work good with other people," "is a trouble maker," "was not an accomplished planner," and "would not be a good person to rehire."

Chambers brought this action against ATA, Knowles and Piburn, alleging that the foregoing statements were defamatory. Chambers contends the defendants have similarly defamed her with prospective employers. However, there is no evidence indicating any prospective employers of Chambers spoke to Knowles or Piburn or contacted ATA for a reference.

ATA, Knowles, and Piburn moved for summary judgment advancing various theories including lack of publication, consent, and qualified privilege. The trial court determined that as a matter of law there was no publication of the statements of Knowles and Piburn and entered summary judgment against Chambers.

■■■ The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Schrader v. Mississinewa Community School Corp.* (1988), Ind.App., 521 N.E.2d 949. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Aetna Ins. Co. of Midwest v. Rodriquez* (1987), Ind.App., 504 N.E.2d 1030.

■■■ In order to determine whether a genuine issue of fact exists, we must accept as true all facts alleged by the nonmoving party and resolve any doubt as to the existence of a genuine issue of fact against the moving party. *Olsson v. Indiana University Board of Trustees* (1991), Ind.App., 571 N.E.2d 585. Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. *Woodward Ins. Inc. v. White* (1982), Ind., 437 N.E.2d 59, *reh. denied.*

## II.

■ The basic elements of an action in defamation are a defamatory imputation, malice, publication, and damages. *Shallenberger v. Scoggins–Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699. In granting summary judgment the trial court determined there was no publication of the alleged defamatory statements because Chambers' mother and boyfriend were acting as her agents.

In support of its ruling the trial court relied on *Brockman v. Detroit Diesel Allison Div., Etc.* (1977), 174 Ind.App. 240, 366 N.E.2d 1201, *reh. denied.* In *Brockman* the alleged defamatory statement occurred in a grievance meeting between the employee's union representative and the employer's management representative. We affirmed the trial court's judgment in favor of the employer, holding "publication to an agent of plaintiff who is acting at plaintiff's behest and on his behalf is tantamount to a publication to plaintiff himself, and as such does not fulfill the publication requirement." *Id.* at 1203.

■ Chambers cites various authorities which she contends are inconsistent with *Brockman* and argues that we should either reject its reasoning outright or refuse to apply it to the present facts. However, in this summary judgment action we are not bound by the trial court's rationale. Rather, we stand in the position of the trial court and consider the same matters; we may affirm the trial court's judgment if it is sustainable on any theory supported by the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154 *reh. denied; Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154. We have no need to address *Brockman* here because the trial court's judgment can be readily sustained on the ground of qualified privilege.

## III.

■ Qualified privilege is a defense to a defamation action and it applies to "communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 672, quoting 18 I.L.E. *Libel and Slander* § 52 at 475 (1959). The privilege arises out of the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty. *Shallenberger, supra.*

■ Whether a statement is protected by a qualified privilege is a matter of law, unless facts giving rise to the privilege are in dispute. *Cross v. Fire Dept. Pension Fund* (1989), Ind.App., 537 N.E.2d 544. This court has held that various communications are protected as privileged, including those between employers and employees, business partners, members of fraternal organizations, creditors and credit agencies. *See Boydston v. Chrysler Credit Corp.* (1987), Ind.App., 511 N.E.2d 318. We have not, however, had occasion to determine whether a qualified privilege exists regarding a former employer's statements given to a prospective employer concerning a former employee. We now hold that it does.

■ As a general rule an employee reference given by a former employer to a prospective employer is clothed with the mantle of a qualified privilege. *See* Prosser & Keaton, *Torts*, Ch. 19, § 115, at 827 (5th ed. 1984); 50 Am.Jur.2d, *Libel & Slander* § 273, at 791 (1970). A former employer has an interest in open communications with a prospective employer regarding a former employee's work characteristics. *Swanson v. Speidel Corp.* (1972), 110 R.I. 335, 293 A.2d 307, 310. Without the protection of the privilege, employers might be reluctant to give sincere yet critical responses to requests for an appraisal of a prospective employee's qualifications. *Calero v. Del Chemical Corp.* (1975), 68 Wis.2d 487, 228 N.W.2d 737, 744.

We agree with the viewpoint of the foregoing authorities and find them consistent with our existing case law; *see Boydston, supra.* There is a self-evident social utility

in free and open communications between former and prospective employers concerning an employee reference. Accordingly, we hold that such communications are protected by a qualified privilege.

In the case before us, both Knowles and Piburn were under the impression they were communicating with a prospective employer of Chambers. Their responses to specific questions represented appraisals of Chambers' employment qualifications. The communications under these circumstances are entitled to the protection of a qualified privilege.

■ However, a statement otherwise protected by the doctrine of qualified privilege may lose its privileged character upon a showing of abuse, namely: (1) The communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statement; or (3) the statement is made without belief or grounds for belief in its truth. *Boydston, supra.*

■ Here, ATA met its initial burden as movant for summary judgment by showing that the statements of Knowles and Piburn were protected by a qualified privilege based on their belief that they were speaking to a prospective employer. Summary judgment was properly entered against Chambers unless she came forward with specific facts demonstrating that the protection of the qualified privilege was lost. Chambers has the burden of showing that Knowles and Piburn were either primarily motivated by a feeling of ill will toward her, or that there was excessive publication of the alleged defamatory statements, or that Knowles and Piburn made the statements without belief or grounds for belief in its truth. *Boydston, supra; Ernst v. Indiana Bell Telephone* (1985), Ind.App., 475 N.E.2d 351.

Chambers does not argue the alleged defamatory statements were excessively published. Rather, she contends that Knowles' statements were primarily motivated by ill will. In support of her contention Chambers directs our attention to deposition testimony which indicates there was an ATA policy which provided that all calls from prospective employers were to be directed to the ATA personnel department; that Knowles was aware of the policy; Knowles did not direct the inquiry from Chambers' mother to personnel and therefore, according to Chambers, Knowles lost any qualified privilege by "stepping outside the scope of the privilege". We are not persuaded.

Chambers was also aware of the ATA policy that inquiries concerning former employees should be directed to the personnel department. Consequently Chambers' instructions to her mother were specifically designed to circumvent the policy and to insure that her inquiries were made directly to Knowles. Moreover Chambers testified it was her belief that any prospective employer would attempt to bypass personnel, if possible, in favor of speaking to the supervisor who actually had first hand knowledge of a former employee.

We cannot agree Knowles abused the protection afforded by a qualified privilege in responding to inquiries from Chambers' mother rather than directing those inquiries to personnel.

In further support of her claim that Knowles' statements were primarily motivated by ill will Chambers asserts Knowles did not like her and was jealous of her because Chambers was unmarried; that Knowles was rude and "nasty" to her, as evidenced by incidents in which Knowles jerked paperwork out of her hand and snapped her fingers at Chambers in a peremptory fashion; and that Knowles generally talked about people behind their backs and that Knowles talked "down" to Chambers in a tone that she did not use with other workers at ATA.

To the extent the foregoing constitutes admissible evidence at all, at most Chambers has merely shown that while she was employed at ATA animosity existed between her and Knowles. That is not enough to overcome the defense of qualified privilege. The animosity must provide the underlying basis for the otherwise privileged statement.

Chambers presented no material facts to the trial court showing Knowles' alleged defamatory statements were primarily motivated by feelings of ill will.

## IV.

■ Next, Chambers argues the statements of Knowles and Piburn were made without belief or grounds for belief in their truthfulness. "Lack of grounds for belief" has been equated to reckless disregard for the truth. *Ernst, supra.* In support of her claim Chambers points to her deposition and the deposition of Knowles which in summary indicate: Chambers' work habits while employed at ATA were satisfactory; there were employees whose overall performance was superior to Chambers, but Knowles did not observe that Chambers was slower or made more mistakes than the others; the group in which Chambers worked had a problem with deadlines, but Knowles could not specify the precise nature of the problem; Chambers had difficulty in getting along with co-workers, but Knowles got along as well with Chambers as she did with other employees; Knowles did not perceive that Chambers had any more difficulty getting along with her than did any other employee.

The thrust of Chambers' argument is that the allegedly defamatory statements of Knowles and Piburn did not reflect an honest evaluation of Chambers' work performance. However the relevant inquiry here is whether the statements of Knowles and Piburn lost the protection of a qualified privilege. Chambers has not presented sufficient evidence to demonstrate that either Knowles or Piburn uttered the alleged defamatory statements with reckless disregard for the truth.

ATA, Knowles and Piburn have met their burden of showing the lack of material fact as to the existence of a qualified privilege, and Chambers has made no showing of abuse of that privilege. The trial court properly granted summary judgment.

Judgment affirmed.

BARTEAU and ROBERTSON, JJ., concur.