Jerry HARTSOUGH, Appellant–
Defendant,

v.

NORWEST INDIANA, N.A. f/k/a First Interstate Bank, Appellee–Plaintiff.

No. 71A04–9203–CV–93.

Court of Appeals of Indiana,
Fourth District.

Oct. 15, 1992.

Transfer Denied Dec. 15, 1992.

William J. Cohen, Elizabeth D. Tate, Elkhart, for appellant-defendant.

James D. Nafe, Nafe & Nafe, South Bend, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Jerry Hartsough appeals the trial court's grant of judgment on the evidence on his claim for punitive damages against Plaintiff–Appellee's Norwest Indiana, N.A. f/k/a First Interstate Bank (Norwest).

We affirm.

Hartsough presents three issues for our review:

   1. whether the trial court erred in granting Norwest's motion for judgment on the evidence on the issue of punitive damages;

   2. whether the trial court abused its discretion by refusing to permit him to present a witness to testify concerning evidence of Norwest's net worth; and

   3. whether the trial court properly instructed the jury on the law and the verdicts it could reach.

On October 31, 1988, Hartsough, a real estate investor, executed an $8000 note, secured by a certificate of deposit, and a

$5000 unsecured note in favor of Norwest for business purposes. The next year on April 10, 1989, Hartsough signed a new $8000 note, replacing the previous one. On April 19, 1989, Hartsough signed an unsecured credit agreement in the sum of $2500 for check overdraft protection.

On May 8, 1989, Hartsough redeemed the certificate of deposit. He told Norwest he lost or misplaced the certificate and executed an affidavit of lost time certificate. At the end of May, 1989, at Norwest's insistence Hartsough executed an unsecured agreement at a higher interest rate to replace the $8000 secured note. It was dated back to the date Hartsough cashed in his certificate, May 8, 1989. Subsequently, Norwest refused to extend further credit.

In response, Hartsough began tendering his note payments to his attorney until the disagreement over his credit line was resolved. Norwest continued to decline additional lending and filed a complaint on the delinquent notes. Hartsough counterclaimed for breach of contract and punitive damages, alleging Norwest revoked his credit lines in bad faith and damaged his business.

On October 28 and 29, 1991, a jury trial on the complaint was held. At the end of Hartsough's case in chief, Norwest moved for judgment on the evidence on the issue of punitive damages, which the trial court granted. After a trial, the jury found for Norwest on its complaint and assessed damages against Hartsough in the amount of $12,500. Hartsough filed a motion to correct errors which the trial court denied without a hearing. He appeals.

Hartsough contends the trial court erred in granting Norwest's motion for judgment on the evidence. He argues he presented substantial evidence of Norwest's willful, malicious, and wanton conduct.

In reviewing the trial court's ruling on a motion for judgment on the evidence the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party. *Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224. The determination of whether the plaintiff has produced sufficient evidence to support his contentions is made by a two-prong analysis of all the direct and circumstantial evidence available. *Lazarus Dept. Store v. Sutherlin* (1989), Ind.App., 544 N.E.2d 513, 518. First, the court must determine whether there is reasonable quantitative evidence to support the plaintiff's allegations. If none exists, the motion should be granted. *Dettman v. Sumner* (1985), Ind.App., 474 N.E.2d 100, 105.

If there is some supporting evidence, however, the trial court must then determine whether a reasonable inference that the plaintiff's allegations are true can logically be drawn from that evidence. Such inferences may not be based upon undue speculation. *Lazarus*, 544 N.E.2d at 518. When reviewing a ruling upon an Ind. Trial Rule 50 motion, we consider only the evidence and reasonable inferences most favorable to the non-moving party. *Id.*

In order to justify an award of punitive damages the plaintiff must establish by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppression. *Powers v. Gastineau* (1991), Ind.App., 568 N.E.2d 1020, 1024. Moreover, the plaintiff must provide some evidence inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence, or other such non-iniquitous human failing. *Adami–Saenger Partnership I v. Wood* (1991), Ind.App., 568 N.E.2d 1112, 1115, *reh. denied, trans. denied.*

Hartsough's testimony provided some evidence to support his allegations of malice. Hartsough testified Norwest did not inform him the certificate of deposit was collateral for the April 19, 1989, note. Further, he denied receiving notice from Norwest his credit lines were cancelled due to his liquidation of the certificate of deposit pledged as security. Hartsough testified he first learned his credit lines were terminated when he reviewed his June bank statement and was not behind in payments at that time. Hartsough further testified he had difficulty with Norwest's officers in reaching an agreement and his real estate

business had been hurt because of his resulting credit problems. This testimony satisfies the quantitative requirement.

■ The second, or qualitative, prong of the test requires a two-step analysis. If the testimony stands uncontroverted in the record, the first question is whether the witness presenting such evidence is credible. *Dettman,* 474 N.E.2d at 104–105. Here, however, Hartsough's testimony was disputed by Norwest's employees. Thus, the trial court was required to proceed directly to the second step of its qualitative failure analysis, namely, whether the inference the burdened party's allegations are true may be drawn without undue speculation. *Dettman, Id.*

Even when viewed in a light most favorable to Hartsough, any finding of scienter necessary to sustain punitive damages on the evidence presented would necessarily have been based on undue speculation. While Norwest's refusal to extend credit frustrated him and caused him financial problems, the decision to stop his credit lines reasonably was consistent with the hypothesis Norwest's employees were overzealous in protecting its credit department. None of Hartsough's evidence refuted that hypothesis. Thus, its conduct could not be deemed so obdurate as to require punishment for the benefit of the general public.[1] That issue was, therefore, properly removed from the jury's consideration.

■ Next, Hartsough contends the trial court abused its discretion when it refused to permit him to present the testimony of Norwest's president concerning Norwest's financial net worth.

An amendment of a pretrial order to allow additional witnesses to testify is a matter within the trial court's discretion and will be reviewed only for abuse thereof. T.R. 16; *Johnston v. Brown* (1984), Ind.App., 468 N.E.2d 597, 599. An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case. *DeMoss Rexall Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655, 656.[2]

Although Norwest knew Hartsough wished to call a bank financial officer, it was not aware of the name until Hartsough caused a subpoena to issue on Steven Watts, Norwest's president, four days before trial. At a pre-trial conference in June, 1991, the trial court ordered the parties to submit their witness lists by September 13, 1991. However, Hartsough did not file such a list until October 2, 1991. At that time he did not list the name of the financial witness he intended to call. Hartsough has not shown why he could not have included Watts' name in the final witness list. We find no abuse of discretion in the trial court's ruling.

Moreover, any error in this regard was harmless. Watts' testimony related to Hartsough's claim for punitive damages. Hartsough hoped to introduce evidence secured through discovery to provide the jurors with a basis for awarding punitive damages. Since the trial court properly granted Norwest's motion for judgment on the evidence regarding Hartsough's claim for punitive damages, the exclusion of Watts' testimony would not require reversal.

Affirmed.

CHEZEM and HOFFMAN, JJ., concur.

---

1. In his third issue, Hartsough claims the trial court's instructions were incomplete since no instruction was given with regard to punitive damages. Likewise, he claims the jury verdict was in error since it did not address punitive damages. However, since the trial court had previously granted Norwest's motion for finding on the evidence, the issue of punitive damages was not an issue before the jury. Therefore, the trial court's instructions and the verdict form were proper.

2. Hartsough argues when we consider the trial court's action, we should consider the danger of surprise or prejudice to Norwest and the goal of doing justice to the merits of the claim. *See Radio Distributing v. Nat. Bank & Trust Co.* (1986), Ind.App., 489 N.E.2d 642, 647. While this is proper standard for the trial court to guide in its reasoning, under our deferential standard of review the question is whether the trial court might reasonably have excluded the witness.