**Angus OWENS, Appellant–Defendant,**

v.

**Patricia L. SCHOENBERGER, Appellee–Plaintiff.**

No. 48A04–9608–CV–343.

Court of Appeals of Indiana.

June 25, 1997.

Rehearing Denied Aug. 20, 1997.

Thomas K. Reynolds, Anderson, Bryce D. Owens, Owens & Owens, Pendleton, for appellant-defendant.

Robert W. York, Arthur R. Baxter, Jr., Robert G. James, Jr., York, Schrager, Baxter, James & Rose, Indianapolis, for appellee-plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Angus Owens ("Angus") appeals the judgment entered against him upon Patricia Schoenberger's ("Patricia") complaint against him for defamation. We affirm.

### ISSUES

1. Whether the trial court improperly struck Angus' defense of qualified privilege.

2. Whether the exclusion of testimony by Dr. Beagley constitutes reversible error.

3. Whether the trial court improperly instructed the jury regarding defamation *per se* or regarding punitive damages.

4. Whether the trial court erred in increasing the amount awarded to Patricia by the jury for compensatory damages.

5. Whether the trial court improperly awarded attorney fees to Patricia.

### FACTS [1]

In the fall of 1991, Patricia was a freshman at Ball State University when she first became a guest on the Wabash College campus and met various members of the Tau Kappa Epsilon ("Teke") fraternity. On that first visit, she met Angus (who had begun attending Wabash in 1988), as well as his girlfriend, Angela Robinson. Thereafter, Patricia and Angela became best friends. Also, over the next two years Patricia frequently visited the Teke House and counted many Tekes as good friends.

In the fall of 1993, Angus asked Angela to marry him, but Angela turned him down. In December of 1993, Angus composed a letter on his computer and distributed 13 copies of the letter, which read as follows:

Dear Fraternity President,

This letter is a warning to you. There has been a scourge on our campus for some time now. They are not townies, more like Wabash groupies. Everyone knows them either as "Tits and Ass" or Angie and Patty or even Angela Robinson and Patricia Schoenberg (or something like that). In a nutshell, I am asking you to call a meeting of some kind and warn your brothers who may have had sexual contact with these women to go to Doc Beard's office and get a checkup before they leave for break. I did and I have been treated for an STD. These two run in the same circles and they may have created a epidemic here in this semester alone. As far as I know for sure they have been with Wallies from Phi Psi, Delt, Phi Delt, Teke, Lamda Chi and GDIs. I hope you will take this seriously, and that you will un-

---

derstand why I am not giving my name on this letter.

A Wabash Student

(R. 406).

The subject matter of the letter became nearly universal knowledge on the Wabash campus. When Patricia heard about the letter, she was "very, very upset." (R. 678). In January of 1994, Angus successfully sought an order banning Patricia and Angela from the Teke House. When Patricia arrived at the Teke House to attend a party to which she had been invited by a Teke, the fraternity president told her she was not allowed to be in the fraternity house, and a group from another fraternity "pointed at [her]" and made comments about her "carrying diseases." (R. 914). After leaving the house, Patricia ingested "about a dozen" prescribed muscle relaxants and some whiskey because she "was hoping to die." *Id.*

On May 10, 1995, Patricia brought an action against Angus because he "caused [her] a great deal of pain and put [her] through a whole lot for no reason." (R. 939). Her lawsuit alleged Angus had made false and libelous statements about her. In his answer to her complaint, Angus asserted the affirmative defenses of truth and qualified privilege, as well as non-party and comparative fault. The non-party and comparative fault defenses were ordered struck. On October 18, 1995, Patricia moved for partial summary judgment, claiming that as a matter of law the defense of qualified privilege was not available to Angus. The court heard argument on January 17, 1996, and took the matter under advisement. Before trial began on March 5, 1996, the trial court held that Angus could not use the defense of qualified privilege. Angus proceeded to trial relying on the defense of truth.

Trial by jury was held over the course of three days, March 5—7, 1996. No evidence was presented that in late 1993 or at any time Patricia had had a sexually transmitted disease (STD). The campus physician, to whom Angus referred in the letter, testified that he had neither diagnosed nor treated Angus for a STD in late 1993. Further, Angus testified, consistent with his December 1995 deposition testimony, that he had never had any reason to believe that Patricia had given him a STD.

The jury returned a verdict for Patricia, with "damages in the sum of $0" *and* "a punitive damages award in the amount of $2,700.00" (R. 1051). Out of the presence of the jury and off the record, counsel discussed the verdict with the trial court. Then, on the record, the court asked defense counsel for his "thoughts," to which counsel responded, "The defense is prepared to waive any irregularity in the verdict." (R. 1057). The court asked, "Will you allow me to reform the verdict and make it one dollar ($1.00) compensatory and twenty six, ninety nine ($2,699.00) in punitive?" *Id.* Counsel responded, "Yes." *Id.* The verdict was so entered.

On March 26, 1996, Patricia filed (1) a motion to correct error, claiming "inadequate compensatory damages," and (2) a motion to recover attorney fees pursuant to Ind.Code 34–1–32–1(b). After hearing arguments [2] and reviewing evidence presented at a May 1 hearing about certain legal fees incurred by Patricia, the trial court ordered compensatory damages to be in the amount of $5,400 and ordered Angus to pay Patricia's attorney fees in the amount of $16,000.

## DECISION

In a defamation action, the elements to be shown by the plaintiff are 1) a communication with defamatory imputation, 2) malice, 3) publication, and 4) damages. *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind. Ct.App.1992), *trans. denied.* A communication "which tend[s] to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person" is defamatory. *Id.* at 146. A communication which imputes "a loathsome disease" is "defamatory *per se* under well-settled common

2. According to the CCS, argument was "heard on Motion to Correct Errors, Costs and Attorney Fees." (R. 5). However, the transcript of this hearing contains only testimony by one of Patri-cia's attorneys about fees. At a subsequent hearing, references were made to arguments asserted at the May 1 hearing. The appellant's record does not reflect these arguments.

law rulings." *Id.* at 145. When a communication is defamatory *per se,* the plaintiff is entitled to presumed damages because the law presumes the plaintiff's reputation has been damaged. *Id.*

### 1. *Qualified Privilege Defense*

Angus claims that he simply "wrote a letter to each of the fraternity presidents and their academic advisors, warning them of a health risk to their fellow brothers," and therefore his "warning" was "a qualified privileged communication between members of the Greek community at Wabash College." Angus' Brief at 26.

Angus cites *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 262, (Ind.1994), wherein our supreme court described qualified privilege as follows:

> [Qualified] privilege applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.
>
> \* \* \* \* \*
>
> The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only.

*Id.* Moreover, "whether a statement is protected by a qualified privilege is a question of law" unless there is a factual dispute. *Id.*

In her motion to the trial court, Patricia contended that according to certain designated material, Angus failed to the meet the "appropriate parties only" requirement of *Schrader.* Angus presented no other authority to the trial court; rather, he claimed that *Schrader* allowed him to pursue the defense of qualified immunity because "whether the respective fraternity presidents are the appropriate parties is clearly a question of fact." (R. 41).

We note that in both of the above statements about qualified privilege, our supreme court began with the requirement of "good faith." We have defined "good faith" to mean a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and belief that one's conduct is not unconscionable. *Lawlis v. Kightlinger & Gray,* 562 N.E.2d 435, 443 (Ind.Ct.App.1990), *trans. denied.* Angus designated the letter as evidence to be considered by the court in his response to Patricia's motion. The extremely negative tenor of the letter belies good faith and suffices to support a determination that his actions in publishing the letter were not in good faith. Therefore, we do not find it to be an erroneous decision by the trial court that as a matter of law the letter was not protected by qualified privilege and Angus could not assert the defense of qualified immunity.

Angus also challenges the procedural propriety of the court's ruling. On October 18, 1995, Patricia moved for partial summary judgment on the matter of the qualified privilege defense. Two days later, the court granted same. Angus then moved for the Order to be set aside, alleging "the court erred in granting said motion without following the trial rules." [3] (R. 42). The court set a hearing thereon several months in the future. At the hearing on January 17, 1996, Angus argued that Ind.Trial Rule 56 required that the adverse party to a summary judgment motion have thirty days to respond and that the matter be heard by the court before ruling thereon. Then the court heard arguments about the law of the qualified privilege defense. The trial court asked, "What cases are you relying on that says this kind of conduct is privileged?" (R. 229). Angus again relied solely on *Schrader.* The court declared that the defense was not available "if you don't meet all these tests," specifically noted the requirement to have "good faith," and took the matter under advisement. (R. 245). Under these facts, we find compliance with the substance of T.R. 56. As the trial court stated at the outset of the hearing,

---

**3.** This phrase constitutes the entirety of Angus' procedural error contention in his motion.

You're saying that I did it too soon and that I should set it aside and set it for hearing. Okay, if I do that, how is it gonna come out differently?

(R. 229).

The trial court provided Angus a hearing and received his argument on the matter. With no additional authority to present the trial court, Angus was not able to show his "good faith" in writing the letter, and the result remains that the trial court did not commit error by ruling that as a matter of law Angus could not pursue the defense of qualified privilege.

### 2. *Excluded Testimony*

The afternoon before trial Angus informed Patricia that Dr. Beagley would be added as a defense witness. Patricia moved to strike, asserting the addition was untimely and "completely irrelevant to the cause of action." (R. 125). The trial court considered "the evidentiary value" of Dr. Beagley's testimony about an examination the day before trial. (R. 363). The trial court also noted that Angus had mentioned in his deposition three months before trial that he had been treated by Dr. Beagley. Thereafter, the court ruled that Dr. Beagley would not be allowed to testify.

Angus claims the trial court committed reversible error in not allowing Dr. Beagley, one of Angus' physicians, to testify. Angus argues that he only "shortly before trial" learned that his Wabash College doctor, Dr. Baird,[4] would testify by deposition that according to his records and his recollection he had neither diagnosed nor treated Angus for a STD in late 1993. Since Angus' own testimony was that Dr. Baird had indeed diagnosed and treated him for genital warts in December 1993, his argument continues, Dr. Beagley should have been permitted to testify that the day before trial he had examined Angus and determined that Angus had genital warts. Angus argues that Dr. Beagley's testimony would have "bolster[ed] his defense of the truth of the letter," and concludes that the testimony should have been

admitted as relevant evidence. Angus' Brief at 29.

 For authority in support of his position, Angus relies solely on Ind.Evidence Rule 401, defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." He provides no authority for his belief that the exclusion of evidence about his having genital warts at the time of trial constitutes reversible error. The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Paullus v. Yarnelle*, 633 N.E.2d 304, 307 (Ind.Ct.App.1994), *trans. denied*. Moreover, whether to allow an additional witness to testify is a matter within the trial court's discretion. *Hartsough v. Norwest Indiana*, 600 N.E.2d 976, 978 (Ind.Ct.App.1992), *trans. denied* (witness not added until October 2nd precluded from testifying at trial held October 28–29th). The trial court's decision that Dr. Beagley would not be allowed to testify is not against the logic and natural inferences to be drawn from the facts before it. *See Paullus* and *Hartsough*.

### 3. *Instructions*

Angus claims the trial court committed reversible error by instructing the jury that Angus' letter was defamation *per se*. According to Angus,

> the only charge made by the Plaintiff was that Mr. Owens' letter defamed her by implying that she had a STD, and that Mr. Owens caught it from her. However, the standard for defamation per se is *imputing* [that one has a loathsome disease], not *implying* [it.] There clearly is a difference between these two words.

Angus' Brief at 24. After citing dictionary definitions of "impute" and "imply," Angus then suggests the letter *neither* "imputes" nor "implies" that Patricia "gave" Angus a STD. *Id.* Although we do not follow his reasoning, his conclusion is that "[n]owhere in

---

4. Angus confirmed that he had spelled the campus doctor's name "wrong" in the letter. (R. 753).

the letter does it state that she has a sexually transmitted disease." *Id.* Angus then directs us to *Rambo v. Cohen,* to which we referred in our initial discussion under DECISION.

Ind.Appellate Rule 8.3(A)(7) requires that when error is predicated on the giving of an instruction, "the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Angus fails to do so. He neither quotes any objection nor directs us to any discussion thereon. We find in the transcript the trial court's statement instructing the jury as follows: "I have already found and instruct you to find that the following statements constitute defamation *per se,*" which precedes these sentences quoted from the letter:

> This letter is a warning to you. There has been a scourge on our campus for some time now. Everyone knows them as Angela Robinson and Patricia Shoenberg (or something like that).
>
> In a nutshell, I am asking you to call a meeting of some kind and warn your brothers who may have had sexual contact with these women to go to Doc Beard's office and get a checkup before they leave for break. I did and I have been treated for an STD.
>
> These two run in the same circles and they may have created an epidemic here in this semester alone.

(R. 1042–43).

■ In reviewing Angus' claim that the evidence was insufficient to support the giving of the instruction, we look only to that evidence most favorable to Patricia and any reasonable inferences to be drawn therefrom. *See Underly v. Advance Mach. Co.,* 605 N.E.2d 1186 (Ind.Ct.App.1993), *trans. denied.* That Patricia had a STD is a reasonable inference to be drawn from the statements in Angus' letter. Therefore, evidence supported the instruction which appears to have been given.

Angus also claims the trial court erred in not instructing the jury to take into account his financial condition when awarding punitive damages. Again, he fails to provide the instructions given by the court on punitive damages. He cites as his sole authority the case of *Riverside Ins. Co. v. Pedigo,* 430 N.E.2d 796 (Ind.Ct.App.1982).

■ In *Riverside,* we said that "evidence of the financial condition of the defendant is admissible and may be considered by the jury in determining the amount of punitive" damages. *Id.* at 808. Thus, we found no error in the trial court's admission of an exhibit showing Riverside's net worth. In the case before us, evidence that Angus earned about $7 an hour working in the family business was presented, as was the fact that he was living with his parents and paying no rent. However, *Riverside* does not mandate that the trial court instruct a jury to consider the defendant's financial condition when making an award of punitive damages.

### 4. *Compensatory Damage Award*

Angus claims the court abused its discretion when it increased the jury's findings of compensatory damages. Specifically, he "believes" the agreement of both parties to allow the trial court to "amend" the damages awarded in the jury verdict to $1 compensatory and $2,699 punitive rendered the "new award of damages" a "consent judgment." Angus' Brief at 21. Accordingly, he refers us to *Ingoglia v. Fogelson Companies, Inc.,* 530 N.E.2d 1190, 1199 (Ind.Ct.App.1988) for the proposition that consent judgments are governed by the principles of contract and concludes that the trial court could not modify the unambiguous intent of the parties that the verdict be in the amount of $1 and $2,699.

■ The record reveals that counsel for Angus and for Patricia agreed to "allow" the trial court "to reform the verdict and make it" $1 compensatory and $2,699 punitive. (R. 1057). This does not constitute an agreement between the parties that the award should be in those amounts. Further, *Ingoglia* concerned a consent judgment entered by the court after being "negotiated by the parties" *id.,* and does not in any way address the question of additur, which is what Patricia sought in her motion to correct error giving rise to the award of $5,400 compensatory damages.

■ Angus next claims the trial court was without authority to increase compensatory damages because additur is error if the jury's award is within the range of the evidence, citing *Symon v. Burger*, 528 N.E.2d 850, 851–52 (Ind.Ct.App.1988). Angus does not address the court's authority pursuant to Ind.Trial Rule 59(J)(5), cited by the trial court in its order. *Weenig v. Wood*, 169 Ind.App. 413, 349 N.E.2d 235, 253, (1976), *trans. denied*, on which *Symon* relies, specifically noted that the trial rule authorizes a trial court to increase the jury's award and enter judgment for a "new amount." Nevertheless, Angus simply claims error pursuant to *Symon* because the $1 compensatory damage award "was well within the range of the evidence."

In *Symon*, the plaintiffs submitted specific dollar figures for what they claimed as special damages, and the jury's award mirrored this total. On the plaintiffs' motion to correct error, the trial court granted additur. The defendant claimed additur was error. We agreed, finding that because the amount of the plaintiffs' special damages was hotly contested, the amount awarded by the jury could "easily have included awards for pain and suffering and loss of consortium." 528 N.E.2d at 853.

In her motion to correct error, Patricia noted the trial court's instruction to the jury that Angus' letter constituted defamation *per se* as a matter of law; the instruction that Patricia was presumed to have suffered compensatory damages including, but not limited to, emotional suffering, loss of community status, and humiliation as a result of Angus' acts; and that Angus presented utterly no evidence to rebut that presumption. Unlike *Symon*, where specific damages figures were presented to the jury, Patricia and her witnesses simply described the effect Angus' letter had had on her life since its publication. She testified that she was humiliated and felt disgraced. Evidence presented at trial indicated Patricia had attempted suicide because of her acute distress following publication of the letter. The evidence further indicated she was subjected to physical discomfort when her friends "made her purge" and "walked her" throughout the night after

she consumed medication and alcohol. (R. 532). The defense submitted no evidence indicating some other event had precipitated Patricia's distress or that Patricia had exhibited no manifestations of distress after publication of the letter.

The jury was instructed that Patricia was presumed to have suffered damages of at least three kinds: emotional suffering, loss of community status, and humiliation. An award of $1 in compensatory damages is not within the range of the evidence, and therefore the trial court did not abuse its discretion in granting additur.

## 5. *Award of Attorney Fees*

As indicated in FACTS, after the trial Patricia moved to recover attorney fees. The motion sought fees under Ind.Code 34–1–32–1(1)(b), which authorizes the trial court to award fees to the prevailing party upon finding that a party pursued a defense that was frivolous or groundless, or continued to employ a defense which clearly became frivolous or groundless. The motion referenced Angus' admission in his deposition three months before trial and at trial that he had absolutely no good faith basis to believe that Patricia had given him a STD; his testimony that he had taken absolutely no steps to ascertain whether Patricia had a STD; and Dr. Baird's testimony that he never diagnosed or treated Angus for a STD in late 1993. Nevertheless, continued Patricia's motion, Angus maintained his "baseless" defense of truth until the end of the three day trial. (R. 134). According to the motion, fees were not sought for the initial "hours in investigation, pleading preparation and discovery" but only for counsel's immediate trial preparation. *Id.* According to the evidence presented, these sixty-four hours each at the customary charges of Patricia's two counsel cost $16,000.

Angus claims that the trial court abused its discretion when it awarded Patricia the $16,000 for attorney fees. He cites *Kahn v. Cundiff*, 533 N.E.2d 164 (Ind.Ct.App.1989). However, Angus fails to acknowledge the affirming opinion, *Kahn v. Cundiff*, 543 N.E.2d 627 (Ind.1989). Our supreme court declared that during the pre-trial period, I.C.

**768**

34–1–32–1 required a litigant to re-evaluate and "determine the propriety of continuing" an action throughout the course of discovery. *Id.* at 629. I.C. 34–1–32–1(b)(2) provides that fees may be awarded to a party who "continued to litigate the action *or defense* after the party's claim *or defense* clearly became frivolous, unreasonable, or groundless." Therefore, consistent with the statute and *Kahn*, Angus had an obligation to re-evaluate and determine the propriety of continuing his defense of truth.

■ At trial, Angus was asked about his December 6, 1995, deposition testimony where he answered "yes" to the question, "So you have absolutely no information to this moment that Patricia Schoenberger ever caused you to have anything at all, am I right?" (R. 981). The subsequent trial testimony is as follows:

Q. Was that true then?

A. Yes, sir.

Q. Is that true today?

A. Yes, sir.

Q. And I asked, "And you still.. yet you still continue to claim that all of these people have the right to know of your claim that she had possibly a sexually transmitted disease? You're still claiming that as you set [sic] here today?" and you answered, "yes."

A. Yes, sir.

Q. Was that true then?

A. Yes, sir.

Q. Is that your position today?

A. Yes, sir.

(R. 981–82).

Based upon these admissions, the trial court could well have found that Angus' continued assertion of the defense of truth after the December deposition and through a three day trial in March warranted an award of the attorney trial fees incurred by Patricia. Accordingly, we find no abuse of discretion.

We affirm.

BARTEAU and FRIEDLANDER, JJ., concur.