**In re George Edward CLINE d/b/a ABC Inspections, Debtor.**

**Patricia J. LYNN, Plaintiff,**

**v.**

**George Edward CLINE, Defendant.**

**Bankruptcy No. 97–5407–RLB–7.**
**Adversary No. 97–240.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Feb. 20, 1998.

John P. Young, Young & Young, Indianapolis, IN, for plaintiff.

Mark R. Galliher, Hopper, Galliher & Tucker, Indianapolis, IN, for defendant.

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment ("Motion for Summary Judgment"), filed by Patricia J. Lynn ("Creditor") on December 10, 1997. George E. Cline ("Debtor") filed a response ("Response") to the Motion for Summary Judgement on January 9, 1998. The Creditor filed a reply ("Reply") on January 20, 1998. The Court, having reviewed the Motion for Summary Judgment, the Response, and the Reply, now makes the following Entry.

The Debtor filed a petition under Chapter 7 on May 12, 1997. Prior to the Debtor's bankruptcy filing, the Creditor did bookkeeping work for the Debtor. During the time that the Creditor worked as a bookkeeper for the Debtor, the Debtor would occasionally deliver blank checks to the Creditor, with the understanding, according to the Debtor, that the Creditor would prepare the checks for signature, and the Debtor would sign them.

At some point in 1992, the Debtor became dissatisfied with the parties' working arrangement. The Debtor fired the Creditor on March 17, 1992. The Debtor asserts that around the time of the firing, he discovered that the Creditor had written checks on the Debtor's account, signed the Debtor's name to the checks, cashed the checks, and then used the funds for personal purposes. On March 17, 1992, the Debtor reported the Creditor's alleged unauthorized check-writing to the Marion County Prosecutor's Office. On April 1, 1992, criminal charges were filed against the Creditor. The charges were eventually dismissed. The Debtor also filed a complaint with the Office of the Indiana Secretary of State, alleging that the Creditor had forged a notary jurat on a land contract.

In December of 1993, the Creditor filed a complaint against the Debtor in state court ("Defamation Complaint"), based on the Debtor's alleged defamation of the Creditor. In Counts I and II of the Defamation Complaint, the Creditor made the following allegations against the Debtor:

## COUNT I

. . . .

2. On March 17, 1992, George E. Cline and ABC Inspections and Termites, Incorporated reported to the Marion County Prosecutors Office Patricia Lynn had written several of his check [sic] to herself and endorsed those checks and cashed them without his permission.

. . . .

4. On April 1, 1992, charges were filed against Ms. Lynn in the Marion County Superior Court Room Number 6.

5. After investigation, the charges were dropped and the State of Indiana agreed in an Agreed Entry of Expungement, Ms. Lynn committed no offense.

6. As a proximate cause of the Defendants' . . . slanderous statement about the Plaintiff, the Plaintiff has suffered mental distress,. physical illness, loss of reputation and great embarrassment, all of which will continue into the future.

WHEREFORE, the Plaintiff respectfully requests the Court to enter an Order of Judgment on the Plaintiff's Complaint against both Defendants and order them to pay a sum which will fully and fairly compensate her for her injuries.

. . . .

## COUNT II

1. On August 27, 1993, the Defendant, George E. Cline, filed with the Secretary of State a notary complaint accusing Patricia J. Lynn of forging a notary jurat on a real estate conditional sales contract between

George E. Cline and Patricia Lynn, dated March 15, 1991.

2. The real estate conditional sales contract was duly notarized by Roselyn Holmes

3. As a proximate cause of the Defendant's slanderous statements against the Plaintiff, the Plaintiff has suffered mental distress, physical illness, loss of reputation and great embarrassment, all of which will continue in the future.

WHEREFORE, the Plaintiff respectfully requests the Court to enter an Order of Judgment on Count II of the Plaintiff's Complaint and order him to pay a sum which will fully and fairly compensate her for her injuries.

After filing the State Court Complaint, the Creditor filed a Request for Admissions. The Debtor did not file a response to the Request for Admissions, even though he was represented by counsel at the time. The admissions were eventually deemed admitted by order of the state court. The Creditor then filed a motion for summary judgment (the "First Motion for Summary Judgment"), based on the Debtor's deemed admissions.

The state court held a hearing on the First Motion for Summary Judgment on June 13, 1995, at which hearing the Creditor appeared in person and by counsel, and the Debtor appeared by counsel. Argument was presented to the state court, and the state court granted summary judgment for the Creditor.[1] On June 25, 1996, a hearing on damages was held, at which the Creditor appeared in person and by counsel, and at which the Debtor appeared in person and by counsel. Evidence was taken by the state court, and the state court entered a judgment for the Creditor for damages in the amount of $175,000.

In the instant Motion for Summary Judgment, the Creditor alleges that collateral estoppel should be applied to bar relitigation of the matters previously decided by the state court. The Creditor further alleges that the debt she is owed should be declared non-

---

**1.** The minute entry for the June 13, 1995 hearing reads as follows:

Pltf i/p & b/c. Def b/c. Arguments presented on M. for S.J. the ct. finds no material issues of fact and grants S.J. on Counts I and II of plaintiffs complaint. Cause ordered set for hrg. on damages. Notice to be sent.

dischargeable pursuant to 11 U.S.C. Section 523(a)(6).

■ In order to apply collateral estoppel to bar the relitigation of a previously-litigated issue, four elements must be met:

(1) the issue sought to be precluded is the same as that involved in a prior action,

(2) the issue was actually litigated,

(3) determination of the issue was essential to the final judgment, and

(4) the party to be estopped was fully represented in the prior action.

*Fidelity Financial Services, Inc. v. Cornell–Cooley*, 158 B.R. 128, 132 (S.D.Ind.1993) (quoting *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992)).

### *Was the Defamation Issue "Actually Litigated"*

■ Where a prior state court proceeding was resolved by a *motion for summary judgment*, rather than after a trial, the issue arises as to whether the matters sought to be precluded in the subsequent bankruptcy proceeding were "actually litigated" in the prior proceeding. This Court has previously held that a state court judgment on an unopposed motion for summary judgment is an "actual litigation", for the purposes of applying collateral estoppel in a subsequent bankruptcy proceeding. *In re Sims*, Bankr.No. 95–6201, Adv. No. 95–429 (Bankr.S.D.Ind., Entry Feb. 10, 1997). Other courts have similarly held that collateral estoppel should be applied in a subsequent bankruptcy proceeding, where the debtor failed to oppose a motion for summary judgment in a prior state court proceeding. *See, e.g., Matter of Staggs*, 177 B.R. 92 (N.D.Ind.1995). *Compare In re Docteroff*, 133 F.3d 210 (3rd Cir.1997) (actual litigation requirement for collateral estoppel is met, even though prior judgment was entered by default as a sanction for the debtor's bad faith conduct in discovery, and was not a determination on the merits).

The application of collateral estoppel is particularly appropriate here, where the Debtor did, in fact, raise some opposition in state court to the Creditor's First Motion for Summary Judgment. The Debtor appeared by counsel at the June 13, 1995 hearing on

liability, and appeared both in person and by counsel at the June 25, 1996 hearing on damages.

For all the foregoing reasons, the Court concludes that the "actually litigated" element for the application of collateral estoppel has been met in the circumstances of this case.

### *Are the Issues Here Identical to the Issues Litigated in the State Court Proceeding*

■ The Court turns next to the question of whether the issue sought to be precluded here, *i.e.*, that the Debtor caused a willful and malicious injury to the Creditor, is the same as the issue that was previously litigated in the state court proceeding. The Debtor argues that the state court could have found that the Debtor defamed the Creditor, without finding that the Debtor acted in a "malicious" manner.

#### *a) The Elements of Defamation under Indiana Law*

■ As recently as 1994, the Indiana Supreme Court has held that "malice" is an element of defamation. In *Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258 (Ind.1994), the Indiana Supreme Court listed "malice" as one of the elements of defamation:

To maintain an action for defamation, a plaintiff must show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages.

*Schrader*, 639 N.E.2d at 261. Similarly, the Indiana Court of Appeals has indicated that "malice" is an element of defamation.

In a defamation case, the elements to be shown by the plaintiff are 1) a communication with defamatory imputation, 2) malice, 3) publication, and 4) damages.

*Owens v. Schoenberger*, 681 N.E.2d 760, 763 (Ind.App.1997).

The cases that the Debtor cites in support of his argument that "malice" is not an element of defamation, are distinguishable on their facts, *see Hotel & Restaurant Emp. and Bartenders Intern. Union v. Zurzolo*, 142 Ind.App. 242, 233 N.E.2d 784 (1968) (discussing intent where defamation not commu-

nicated to third person), *Olsson v. Indiana University Bd. of Trustees,* 571 N.E.2d 585, 587 (Ind.App.1991) (discussing qualified privilege to defame), and *AAFCO Heating & Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580 (1974) (discussing qualified constitutional privilege, where matter discussed is of public concern), or have been overruled by cases such as *Schrader.*

### b) *Proof of "Malice" Under Section 523(a)(6)*

 According to the Seventh Circuit, for the purposes of Section 523(a)(6), an act is "malicious" if it is done "'in conscious disregard of one's duties or without just cause'". *Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) (quoting *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986)). Pursuant to the holding in *Thirtyacre,* the term "malicious" in Section 523(a)(6) does *not* require a showing of illwill or specific intent to do harm. *Thirtyacre,* 36 F.3d at 700. For the Creditor to prove in this Court that the Debtor acted with "malice", the Creditor need not prove that the Debtor had a specific intent to do harm to the Creditor, *i.e.,* that the Debtor intended to defame her when he reported her alleged crime to the Prosecutor's Office, or when he filed a notary claim with the Secretary of State. To prove that the Debtor acted with malice, the Creditor need only prove that the Debtor acted "in conscious disregard of [his] duties", or "without just cause or excuse". *Thirtyacre.*

Having reviewed the Defamation Complaint filed in state court, the state court's findings, and the elements of defamation under Indiana law, it is the conclusion of the Court that the state court could not have found the Debtor liable for defamation, without finding either that the Debtor acted in conscious disregard of his duties, or that the Debtor acted without just cause or excuse.

For all the foregoing reasons, the Court concludes that the various elements for the application of collateral estoppel have been met in this case. Based on the application of collateral estoppel, the Court further concludes that the debt that the Debtor owes to the Creditor is a debt for a willful and mali-

cious injury to the Creditor, and is nondischargeable pursuant to Section 523(a)(6).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the debt owed to the Creditor in the amount of $175,-000.000 is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(6).